UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION, *et al.*<br><br>*Defendants*. | Civil Action No. 1:25-cv-01120 (DLF) |

**PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING STANDING**

An organization has associational standing to bring suit on its members' behalf when: (1) at least one of its members would have standing to sue in their own right; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Sierra Club v. FERC*, 827 F.3d 59, 65 (D.C. Cir. 2016). To establish a member's standing, Plaintiff must demonstrate that: (1) the member has suffered an "injury in fact"; (2) caused by the challenged action; and (3) a likelihood that the "injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Organizations with members who are parents seeking relief on behalf of their children have associational standing. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718-19 (2007).

I.  **At least one NAACP member has standing to sue in their own right.**

   a. **NAACP members have standing to seek emergency relief under the First Amendment to enjoin the Title VI Documents.**

The rules for standing are "relaxed" for First Amendment claims. *Eisenstadt v. Baird*, 405 U.S. 438, 445-46 & n.5 (1972). Even absent this relaxed standard, Plaintiff can show a substantial likelihood of standing to enjoin the Title VI Documents under the First Amendment.

   i. **NAACP's members' injuries are concrete, particularized, and imminent.**

The Title VI Documents deem as unlawful and threaten imminent enforcement against any conduct by NAACP members that is "affected with a constitutional interest." *NB. Anthony List v. Driehaus*, 573 U.S. 149, 148-59 (2014) ("a plaintiff satisfies the injury-in-fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed."). This claim does not involve an effort by the NAACP to vindicate the rights of others and thus does not implicate prudential third-party standing considerations: NAACP members have the right to receive instruction on, openly discuss, and express the viewpoints targeted by the Title VI Documents. *See* Pl. Mot., Dkt. 13 at 24-28. In violation of those rights, the

1

Title VI Documents have inflicted and continue to inflict concrete harm on NAACP members' protected conduct and threaten imminent enforcement against intended protected conduct. These two harms suffice to establish injury-in-fact. *Susan B.*, 573 U.S. at 158 (harm must be "concrete and particularized"); *id.* at 159 (where government enforcement is at issue, pre-enforcement review is permitted where "there exists a credible threat of prosecution" or administrative action); *see also Navegar, Inc. v. U.S.*, 103 F.3d 994, 1001 (D.C. Cir. 1997).

Since the Title VI Documents bar "certain DEI" activities and instruction on systemic racism, NAACP members have been, and will continue to be, denied participation in events the Waterloo's 19th Annual African American Read-In, as well as courses and lectures on racism in healthcare. *See* Graves Decl. ¶¶ 8-10; Bailey Decl. ¶ 50; Lewis Decl. ¶ 37.

In addition, NAACP members' intended conduct is proscribed by the Title VI Documents' prohibitions. *Susan B.*, 573 U.S. at 162. For example, Member E's child is eager to enroll in an ethnic studies course and continue learning about the Unites States' history of systemic racism. Johns Decl. ¶¶ 106, 114-19. Member K intends to continue presenting on campus tours about her university's history of enslaving Black people. Bailey Decl. ¶ 42. And Member L enrolled in two courses for the Fall 2025 semester that necessarily include discussions of systemic and structural racism. Bailey Decl. ¶ 47. But these courses and programs have been deemed unlawful by the Title VI Documents. *See* Pl. Mot., Dkt. 13 at 14.

The injury to NAACP members' intended conduct is "certainly impending" because that conduct is subject to a credible threat of enforcement under the Title VI Documents, thereby directly injuring NAACP members. *Susan B.*, 573 U.S. at 159. First, the Title VI Documents direct schools to certify compliance by April 24[1] or face the loss of federal funds and litigation. Pl. Mot.,

---

[1] *Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*, No. 1:25-cv-00091, (D.N.H. Apr. 9, 2025), ECF 48-1.

2

Dkt. 13 at 4-5. Second, ED has already suspended funds to at least two universities pending agreement that they will, *inter alia*, terminate diversity, equity, and inclusion programs and place an ethnic studies department under academic receivership. *See* Pl. Mot., Dkt. 13 at 20-21. The Supreme Court "ha[s] observed that past enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical." *Susan B.*, 573 U.S. at 164. Third, "the credibility of this threat is bolstered by the fact that authority to file a complaint . . . is not limited to . . . an agency," *id.*, but private parties are encouraged to use the EndDEI portal to report schools promoting "critical theory" and "divisive ideologies." *See* Pl. Mot., Dkt. 13 at 19.

### ii. NAACP members' injuries are traceable to Defendants' actions.

NAACP members present "substantial evidence of a causal relationship between the government policy and [their schools'] conduct, leaving little doubt as to causation and the likelihood of redress." *Mennonite Church USA v. U.S. Dep't of Homeland Sec.*, No. 25-cv-00403 (DLF), 2025 WL 1094223, at *5 (D.D.C. Apr. 11, 2025). NAACP members' schools have already cancelled a Read-In Event, a course, and a guest lecture to comply with the Title VI Documents. Graves Decl. ¶¶ 8-10; Bailey Decl. ¶ 50; Lewis Decl. ¶ 37. That NAACP members' schools censored these programs pre-enforcement does not undermine Plaintiff's standing, even when the school were the ultimate decision makers. Indeed, the "predictable effect" of the Title VI Documents and their threatened enforcement is that schools will infringe upon NAACP members' speech to avoid enforcement. *Id.* at 23-24; *see also Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019) (concluding that "primarily future injuries" dependent in part on the conduct of third parties are sufficient to confer standing); *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 24 (D.D.C. 2020) (noting that this Circuit has "routinely found causation established in cases where the relevant 'third-party conduct is voluntary but reasonably predictable.'"). Plaintiff's injuries are thus traceable to Defendants. *Id*.

3

### iii. NAACP members' injuries will be redressed by the sought relief.

Enjoining the Title VI Documents is necessary to restore NAACP members' ability to free associate and learn from, discuss, and express targeted viewpoints free of the Title VI Documents' prohibitions. *See Ukrainian-Am. Bar Ass'n, Inc. v. Baker*, 893 F.2d 1374, 1378-79 (D.C. Cir. 1990); *see also Ipsen Biopharmaceuticals, Inc. v. Becerra*, 678 F. Supp. 3d 20, 34 (D.D.C. 2023).

### b. NAACP members have standing to seek emergency relief under the Administrative Procedure Act to enjoin the Title VI Documents.

NAACP members are clearly entitled to judicial review of the Title VI Documents under the broad judicial review provision of 5 U.S.C. § 702, without any consideration of third-party standing, as they have themselves suffered and will continue to "suffer[ a] legal wrong because of agency action," or, at minimum, have been "adversely affected or aggrieved by agency action" due to the promulgation of the Title VI Documents. 5 U.S.C. § 702. NAACP members are harmed by the predictable reactions of schools to the Title VI Documents. As discussed below, Plaintiff also satisfies Article III standing for their APA claims. *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019); *Sierra Club v. Jewell* 764 F.3d 1, 7-8 (D.C. Cir. 2014).

### iv. NAACP Members' injuries are concrete, particularized, and imminent.

NAACP members have suffered concrete, particularized harms as a result of the Title VI Documents' promulgation in violation of required procedures, arbitrary and capricious nature, and conflicts with NAACP members' rights and interests under the First and Fifth Amendments to the Constitution, Title VI of the Civil Rights Act of 1964, and other federal laws. First, NAACP members were deprived of the right to comment on a new Title VI legislative rule, in violation of required procedures. *See* Pls. Mot., Dkt. 13 at 33-35. Given the NAACP's decades-long work to ensure equal educational opportunities for Black students, Plaintiff regularly participates in advocacy related to Title VI and would have submitted a comment on behalf of its members. Lewis Decl. ¶¶ 8-10; Johns Decl. ¶¶ 5-7, 13-14. Because the NAACP was deprived of the "procedural

4

right to protect [its] concrete interests" through notice-and-comment, and because ED's deviation from procedure has inflicted injury on NAACP members whom Title VI is intended to protect, it has established a concrete injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (citing *Lujan*, 504 U.S. at 572); *Iyengar v. Barnhart*, 233 F. Supp. 2d 5, 12-13 (D.D.C. 2002); *Mendoza v. Perez*, 754 F.3d. 1002, 1010, 1016 (D.C. Cir. 2014).

In addition, the Title VI Documents' prohibition on race-neutral measures to increase diversity, such as the removal of racially biased criteria like standardized tests and educator discretion from the admissions process, inflicts ongoing harm on NAACP members' interest in equal opportunity to compete in selective admissions, thereby establishing injury-in-fact.

Now that schools have been, or are at imminent risk of being, coerced into adhering to ED's new ongoing policy barring "certain DEI activities," NAACP members have, and will continue to be, deprived of efforts that help ensure they enjoy equal educational opportunities. For example, because of the Title VI Documents, Virginia Beach City Public Schools ("VBCPS") suspended its Equity Plan, which addressed disparities negatively impacting Black students, including Member I's son. Bailey Decl. at ¶¶ 10-17. The culturally responsive practices and social emotional learning implemented by the Equity Plan have been essential in ensuring Member I's son can regulate his emotions and engage with his classmates and schoolwork and losing them will limit his ability to learn. *Id*. at ¶¶ 21-23.

The Title VI Documents foreclose activities NAACP members intend to continue, such as diversity, equity, and inclusion efforts, Johns Decl. at ¶ 44-46; Bailey Decl. at ¶ 33-37, applying to and participating in programs that use race-neutral efforts to equalize admissions, Johns Decl. at ¶ 18; Bailey Decl., at ¶ 8, and benefiting from efforts to diversify faculty and address racial disparities in discipline, Johns Decl. at ¶ 18, 40, ¶¶ 75-80; Bailey Decl. at ¶ 24.

5

The injury to NAACP members' intended conduct is "certainly impending" because that conduct is subject to a credible threat of enforcement under the Title VI Documents. *Susan B.*, 573 U.S. at 159. For the reasons discussed above, *supra* at Sec. 1(a)(i),, ED's directives, investigations, and complaint portal establish a "credible threat" of administrative enforcement. *Id*. at 158. For example, ED announced over fifty investigations of universities pursuant to the Title VI Documents, including universities collaborating with a program to assist underrepresented Ph.D candidates, and froze nearly $9 billion in federal funds to Harvard University pending agreement that the university will, *inter alia*, "immediately shutter all diversity, equity, and inclusion (DEI) programs, offices, committees, positions, and initiatives . . . and stop all DEI-based policies."[2]

    **v.**    **NAACP members' injuries are traceable to Defendants' actions.**

This evidence leaves "little doubt as to causation and the likelihood of redress." *Mennonite Church USA v. U.S. Dep't of Homeland Sec.*, No. 25-cv-00403 (DLF), 2025 WL 1094223, at *[x] (D.D.C. Apr. 11, 2025). First, ED directly deprived Plaintiff of its procedural right to notice-and-comment. By "changing its policy without notice and comment, [ED] appreciably increased the risk the plaintiff's interest [in equal educational opportunity to students] would be compromised." *See Iyengar v. Barnhart*, 233 F. Supp. 2d 5, 13 (D.D.C. 2002). Second, NAACP members' schools have already suspended diversity, equity, and inclusion programs to comply with the Title VI Documents. Lewis Decl. ¶ 32-36 (university disbanded DEI center); Bailey Decl. ¶¶ 12-17 (school board disbanded equity plan). Other members fear similar cuts. Johns Decl. ¶62. The Title VI Documents have, and will continue to, result in "reasonably predictable" third party suspension of

---

[2] Emma Tucker, *Trump Administration Demands Changes in Letter to Harvard University as Review of Federal Funding Underway*, CNN (Apr. 4, 2025), https://www.cnn.com/2025/04/04/us/harvard-trump-administration-demand-letter/index.html; Letter from John Gruenbaum et al., Comm'r of the Fed. Acquisition Serv., to Alan M. Garber, President of Harvard Univ., and Penny Pritzker, Lead Member of Harvard Corp. at 2-3 (Apr. 11, 2025), https://www.harvard.edu/research-funding/wp-content/uploads/sites/16/2025/04/Letter-Sent-to-Harvard-2025-04-11.pdf.

programs that are lawful, and often necessary, to ensure equal educational opportunity under the Equal Protection Clause and Title VI. *Whitman-Walker*, 485 F. Supp. 3d at 24. Plaintiff has also shown that the Documents' "predictable effect" is that schools will continue to suspend such programs to comply with the Title VI Documents, contributing to a hostile environment for NAACP members.

### vi.     **NAACP members' injuries will be redressed by the sought relief.**

Setting aside the Title VI Documents will redress ongoing harms by restoring NAACP members' ability to benefit from prohibited programs. *Ipsen*, 678 F. Supp. 3d at 34.

### c.     **NAACP members have standing to seek emergency relief under the Fifth Amendment's vagueness clause to enjoin the Title VI Documents.**

Plaintiff's vagueness claim is predicated on its members' right to receive information. *See supra* Sec. I(a). As such, the requirement for standing on this claim enjoys the same relaxed standard as in the First Amendment context. *Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610, 621 n.5 (1976); *see also*, *supra* Sec. I(a). Additionally, students possess a liberty interest in their right to receive information. *See Arce v. Douglas*, 793 F.3d 968, 987-89 (9th Cir. 2015). They can, therefore, establish standing to challenge a vague rule that infringes upon that right even when, as here, they are not directly regulated by that vague rule. *Id.* at 987. As discussed in Plaintiff's Motion at 29–32, the Title VI Documents are so vague that schools and teachers will need to steer clear of offering courses and teaching topics that touch on undefined concepts such as "diversity, equity, and inclusion" to comply. Indeed, a professor at Virginia Commonwealth University has already pulled a course called Disability, Diversity, and Human Rights from the Fall 2025 catalog in an effort to comply with the Title VI documents. Bailey Decl. ¶ 50 (Member M). Some of Plaintiff's members planned to take the course next semester but can now no longer do so and will be deprived of all the information they wished to learn from the course. *Id.* Thus, at least one member can establish injury in fact on Plaintiff's vagueness claim. *Cf. Falls v. DeSantis*,

7

609 F. Supp. 3d 1273, 1284 n.12 (N.D. Fla. 2022) (finding that because the plaintiff did not present evidence that information he intended to receive would be offered "absent the allegedly vague provisions," he did not have standing to bring a vagueness claim under a right to receive information theory). Plaintiff's arguments as to traceability and redressability for this claim are the same as for its First Amendment claims and are set forth, *supra*, Sec. I(a)(ii)-(iii).

## II. The interests that NAACP seeks to protect are germane to NAACP's purpose.

NAACP's litigation goals—defending activities that afford Black students equal educational opportunity—are "pertinent to its special expertise and the grounds that bring its membership together." *Humane Soc. of the U.S. v. Hodel*, 840 F.2d 45, 56 (D.C. Cir. 1988). *See generally Brown v. Board of Ed. of Topeka*, 347 U.S. 483 (1954); Lewis Decl. at ¶¶ 6, 12.

## III. Neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Neither the claims asserted, nor relief requested require member participation. Plaintiff's claims do not focus on individual injuries. Instead, the injuries of members serve as examples of systemic harms. *All. for Open Soc'y Int'l v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 229 (2d Cir. 2011).

DATED: April 21, 2025.

Respectfully Submitted,

/s/ *Katrina Feldkamp*

| | |
|---|---|
| Katrina Feldkamp* | Jin Hee Lee, DC Bar No. 1740850 |
| Allison Scharfstein* | Michaele N. Turnage Young, DC Bar No. 242398* |
| Lauren Carbajal* | Morgan Humphrey* |
| NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC. | NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC |
| 40 Rector Street, 5th Floor | 700 14th Street N.W., Ste. 600 |
| New York, New York 10006 | Washington, D.C. 20005 |
| (212) 965-2200 | (202) 682-1300 |
| kfeldkamp@naacpldf.org | jlee@naacpldf.org |
| ascharfstein@naacpldf.org | mturnageyoung@naacpldf.org |
| lcarbajal@naacpldf.org | mhumphrey@naacpldf.org |

*Admitted Pro Hac Vice*

9

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitations of Local Civil Rule 7€, as it does not exceed eight pages, as well as the typeface requirements of Local Civil Rule 5.1(d), as it has been prepared using Microsoft Word in 12-point Times New Roman font.

Dated: April 21, 2025                     Respectfully submitted,

                                          */s/ Katrina Feldkamp*

                                          NAACP LEGAL DEFENSE &
                                          EDUCATIONAL FUND, INC.
                                          40 Rector Street, 5th Floor
                                          New York, NY 10006
                                          (212) 965-2200
                                          kfeldkamp@naacpldf.org

                                          *Counsel of Record for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 21, 2025, this supplemental brief was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

Dated: April 21, 2025                     Respectfully submitted,

                                          */s/ Katrina Feldkamp*

                                          NAACP LEGAL DEFENSE &
                                          EDUCATIONAL FUND, INC.
                                          40 Rector Street, 5th Floor
                                          New York, NY 10006
                                          (212) 965-2200
                                          kfeldkamp@naacpldf.org

                                          *Counsel of Record for Plaintiff*